AUSA: Adam Z. Margulies

| UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK | **25 MAG 247** |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MANUEL BARREIRO,<br><br>                    Defendant. | **COMPLAINT**<br><br>Violations of 21 U.S.C. § 846<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK:

SUSAN J. RUIZ, being duly sworn, deposes and says that she is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

### COUNT ONE
### (Conspiracy to Distribute Narcotics)

1. From at least in or about January 2025, in the Southern District of New York and elsewhere, MANUEL BARREIRO, the defendant, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the controlled-substance laws of the United States.

2. It was a part and an object of the conspiracy that MANUEL BARREIRO, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance involved in the offense was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent with HSI, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.      Based on my training and experience, my participation in this investigation, my conversations with a confidential source (the "CS") and an undercover law enforcement officer (the "UC"),[1] my conversations with other law enforcement officers, and my review of law enforcement reports and records, I have learned, among other things, the following:

a.      Since at least approximately in or about January 2025, law enforcement has been investigating a drug trafficking organization that appears to traffic kilogram-quantities of fentanyl in the New York City area.

b.      As described in more detail below, from at least on or about January 3, 2025, through on or about January 13, 2025, MANUEL BARREIRO, the defendant, communicated with the CS and others via WhatsApp messages, voice notes, and calls, to facilitate the sale of approximately two kilograms of fentanyl to a purported associate of the CS—who, unbeknownst to BARREIRO, was the UC—and to facilitate providing the CS's purported associate with a sample of the to-be-sold drugs in advance of the sale.

The January 6, 2025 Sample

c.      On or about January 6, 2025, BARREIRO told the CS, in substance and in part, that a sample of drugs would be provided to the CS's purported associate in the parking lot of a particular retail establishment located in Queens, New York (the "Queens Parking Lot"). On that same date, BARREIRO also sent the CS, via WhatsApp message, a photograph of a serial number on what appeared to be United States currency ("Code-1"). Based on my training and experience, I know that for reasons related to security and evasion of both law enforcement as well as thieves and rivals, drug traffickers will often demand a code—often a unique set of numbers, such as the serial number sent by BARREIRO—from a prospective buyer before consummating a drug sale. If both the seller and the buyer have a picture of the same serial number, then they will consummate the drug deal.

d.      After receiving the Queens Parking Lot location and Code-1 from BARREIRO, the CS provided that location and photograph to the UC.

e.      On or about January 6, 2025, a co-conspirator of BARREIRO ("CC-1") arrived at the Queens Parking Lot in a particular car (the "CC-1 Vehicle") and met with the UC. During that meeting, CC-1 asked the UC, in substance and in part, for the code. The UC then showed CC-1 a photograph of Code-1, which the CS had previously received from BARREIRO, as described above. CC-1 then handed the UC a clear container with a white cap and a white powdery substance inside it. That container is pictured in **Image 1**.

---

[1] The CS has been providing information to law enforcement since approximately 2016 in exchange for financial compensation and immigration benefits in the form of deferred action. The CS was convicted of selling narcotics in violation of New York state law in or around 2000, subsequently deported, and reentered the United States. The information provided by the CS in this investigation and other investigations has been found to be reliable and corroborated by other independent evidence.

2



**Image 1**

  f. On or about January 9, 2025, the New York City Police Department's controlled substances laboratory tested the white powdery substance inside the clear container pictured in **Image 1**. The substance weighed approximately 1.735 grams and tested positive for fentanyl.

January 13, 2025: Two-Kilogram Sale

  g. On or about January 9, 2025, MANUEL BARREIRO, the defendant, sent the CS another photograph of Code-1.

  h. On or about January 10 and 11, 2025, BARREIRO, at the CS's request, sent the CS videos of what appeared to be the drugs that the CS was seeking to purchase. The videos depicted what appeared to be two brick-shaped objects, wrapped in gray tape, with black markings on them. Based on my training and experience and my participation in this investigation, I know that wholesale drug traffickers often deal drugs in kilogram quantities of compressed powder pressed into brick shapes.

  i. On or about January 13, 2025, BARREIRO provided the CS with the location of a particular retail establishment in the Bronx, New York, with a parking lot (the "Bronx Parking Lot"), at which BARREIRO's associate would sell the agreed-upon drugs to the CS's purported associate. BARREIRO also told the CS the make and model of the car that would arrive at the Bronx Parking Lot with the drugs. The make and model that BARREIRO described were the same as the make and model of the CC-1 Vehicle that CC-1 used to conduct the January 6, 2025 sample transaction. The CS subsequently passed along the Bronx Parking Lot location and the information regarding the seller car make and model that the CS received from BARREIRO to the UC.

  j. Later on that same date (January 13), the UC met with CC-1 and another co-conspirator of BARREIRO and CC-1 ("CC-2") at the Bronx Parking Lot. During the meeting, the UC asked CC-1, in substance and in part, whether CC-2 was the supplier of the drugs that were the subject of the deal. In response, CC-2 said, in substance and in part, that he was the right hand. CC-1 then said, in substance and in part, that although CC-1 knew the UC, the UC should still show the UC's code to maintain protocol. The UC then showed CC-1 a photograph of Code-1, which the CS had previously received from BARREIRO.

k. Shortly after the UC showed CC-1 the photograph of Code-1, the UC requested, in substance and in part, to see the product; in response to that request, CC-2 retrieved a black bag with red lettering (the "Bag") and began to show the bag to the UC. At that time, law enforcement officers placed both CC-1 and CC-2 under arrest.

l. Inside the Bag, law enforcement officers found two vacuum-sealed brick-shaped objects, wrapped in gray tape, with the same appearance as the brick-shaped objects in the videos BARREIRO sent the CS on January 10 and 11, 2025 (*see supra* ¶ 5.h). A still image from the January 10 video is pictured below in **Image 2**, and the brick-shaped objects recovered from the Bag on January 13 are pictured below in **Image 3**.

 

**Image 2**        **Image 3**

m. The objects pictured in **Image 3** were subsequently tested at a Drug Enforcement Agency laboratory, tested positive for the presence of fentanyl, and collectively weighed approximately 1.965 kilograms.

WHEREFORE, I respectfully request that MANUEL BARREIRO, the defendant, be imprisoned or bailed, as the case may be.

SUSAN J. RUIZ
Special Agent
HSI

Sworn to before me
this 25th day of January 2025

THE HONORABLE SARAH L. CAVE
United States Magistrate Judge
Southern District of New York

4